STUCKY, Judge,
with whom RYAN, Judge,
joins (concurring in part and dissenting in part):
Despite protestations to the contrary, the majority has, in effect, created an automatic right to Rule for Courts-Martial (R.C.M.) 305(k) credit for even the slightest deviation from regulatory compliance. I believe this approach is as misguided now as it was in United States v. Adcock, 65 M.J. 18, 26 (C.A.A.F.2007) (Stucky, J., dissenting). Therefore, while I concur with the majority’s judgment that no additional confinement credit is warranted under Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813 (2000), I respectfully dissent from that portion of the judgment that awards Appellant additional confinement credit.
As I noted in Adcock:
The phrase “abuse of discretion” as used in R.C.M. 305(k) must be read in conjunction with R.C.M. 305(j), which is the only other place this phrase appears in R.C.M. 305. R.C.M. 305(j) requires that, upon motion of the accused, the military judge must review for an abuse of discretion the seven-day reviewing officer’s decision, made pursuant to R.C.M. 305(i)(2), to continue the pretrial confinement of an accused. It is transparent that the phrase “abuse of discretion” refers to the military judge’s review of the seven-day reviewing officer’s consideration of all prior decisions by military authorities to place and retain a servicemember in pretrial confinement. See R.C.M. 305(h)(2); R.C.M. 305(i)(l). R.C.M. 305(k) thus empowers, but does not require, the military judge to award additional confinement credit for an abuse of discretion in a decision to continue an accused’s confinement.
The phrase “abuse of discretion” in R.C.M. 305(k) does not refer to the conditions of an accused’s confinement. R.C.M. 305(k) neither empowers the military judge nor is meant to be used by this Court as a tool to examine and second-guess every decision made by confinement officials as to the place or circumstances of an accused’s confinement. Rather, it is the “unusually harsh circumstances” prong of R.C.M. 305(k) that the President used to describe the conditions of pretrial confinement that permit the military judge to award additional confinement under R.C.M. 305(k).
Id. at 27.
Even if the majority’s interpretation of R.C.M. 305(k) were correct, its resolution of *259 the issue in this case provides Appellant an unwarranted eighty-three-day windfall. He has already received credit due to his being continued on suicide watch after August 26, 2004, the date Dr. Leckie first suggested that continued formal suicide watch was no longer necessary, while at the same time noting that Appellant remained at “mild to moderate long-term risk for committing suicidal and homicidal behaviors” which were “impossible to specify” further because of his uncoopera-tiveness. The issue here is whether Appellant should be afforded additional credit because he was not evaluated by medical staff on a daily basis.
This is not a case in which the Air Force abandoned a prisoner to languish in his cell without medical support. Appellant conceded that he was “evaluated about every other day by medical personnel.” Appellant’s voluminous medical records in the record of trial attest to the medical staffs attempts to provide meaningful care to a totally uncooperative prisoner over the entire period he was on suicide watch. They visited him every second or third day, asked how he felt, checked his vital signs, and noted his condition. He saw mental health practitioners at least seven times in the eighty-six days at issue.
The majority implies that Dep’t of Air Force, Instr. 31-205, The Air Force Corrections System para. 8.10 (Apr. 7, 2004), requires mental health officials to visit Appellant daily and note specifically and daily in the medical or confinement records that suicide watch was still appropriate. That is simply not the case. While the regulation may be read to require daily visits either by a medical authority or someone else who then reports his or her findings to the medical authority for review, it does not require daily evaluations by mental health practitioners or daily notations that suicide watch is still appropriate. In any event, the overall level of medical attention and care surely did not mandate, as the majority holds, that the military judge award Appellant any additional confinement credit for the period he spent on suicide watch up until August 26, 2004.
The majority concludes that para. 8.10 was designed to “ensure[] that individuals placed on ‘suicide watch’ will be removed from the additional restrictive conditions as soon as medically appropriate.” If that is the purpose of para. 8.10, then even under the majority’s interpretation of R.C.M. 305(k), Appellant should only be entitled to three additional days of credit — the time between the last visit of a medical authority who made no recommendation that the suicide watch should be terminated (August 23, 2004), and August 26, 2004, when Dr. Leckie made such a recommendation.
This case presents an even weaker rationale for judicial oversight than did Adcock. The majority’s holding encourages appellants to look for and litigate perceived infractions of confinement regulations, no matter how de minimis they may be. With today’s judgment, the concerns I expressed in Adcock have been realized. This Court has now established “itself as the de facto supervisor of substantive conditions of confinement involving members of the armed forces — a function that we are exceedingly ill suited to perform.” 65 M.J. at 29 (Stueky, J., dissenting).